IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**SCOTT HUTCHINSON ENTERPRISES, INC.,**

    **Plaintiff,**

v.                                                                                    Case No.:  3:15-cv-13415

**CRANBERRY PIPELINE CORPORATION
and CABOT OIL & GAS CORPORATION,**

    **Defendants.**

**MEMORANDUM OPINION and ORDER**

Pending before the Court is Defendants' Motion to Compel. (ECF Nos. 96, 97). Plaintiff has filed a response in opposition to the Motion, (ECF No. 105), and Defendants have replied. (ECF No. 112). The issues in dispute are clear; accordingly, oral argument is unnecessary. For the reasons set forth below, Defendants' Motion to Compel is **GRANTED, in part**, and **DENIED, in part**.

**I. Relevant Facts**

This civil action involves a gas pipeline owned by Defendants, which is located on real property purchased by Plaintiff for the purpose of developing a residential subdivision ("Ridgewood Subdivision"). The dispute between the parties arose in 2013 when Plaintiff began improvements on an existing roadway on the property, which involved excavating the earth above and around the pipeline. When Defendants learned of the excavation activities, they requested that Plaintiff cease work, fearing that the pipeline would rupture and potentially cause bodily injury, or even death. Plaintiff ceased

1

operations, and the property has been sitting, undeveloped, since that time. Plaintiff claims that Defendants' pipeline renders the Ridgewood Subdivision undevelopable. Consequently, Plaintiff asserts a variety of claims against Defendants and seeks, in relevant part, damages for the lost market value of the projected residential lots at Ridgewood Subdivision.

In August 2014, Plaintiff entered into a contract with Dr. William Lavery for the sale of Ridgewood Subdivision. Dr. Lavery made a down payment of $15,000, which was to be applied to the contract price of $465,000. The contract specified that if Dr. Lavery failed to consummate the transaction, he would forfeit the deposit and would be responsible for Plaintiff's actual damages incurred as a result of the breach. Dr. Lavery subsequently decided not to purchase Ridgewood Subdivision. Accordingly, Plaintiff filed a lawsuit against Dr. Lavery for breach of contract, seeking specific performance of the contract terms, or in the alternative, forfeiture of the down payment and an award of actual damages. (*See* ECF No. 97-1 at 21-22). Plaintiff and Dr. Lavery ultimately resolved the lawsuit by entering into a confidential settlement agreement.

## II. Motion to Compel

Defendants move to compel more complete responses to four discovery requests. First, Defendants ask the court to require Plaintiff to disclose the terms of its settlement agreement with Dr. Lavery in response to Interrogatory No. 11. Interrogatory No. 11 asked Plaintiff to "[d]escribe all actions taken to market the Ridgewood Subdivision for sale or lease since April 1, 2013 and any communication with potential lessees or purchasers of the property." (ECF No. 97-1 at 8). In response, Plaintiff objected on the basis of relevance, but proceeded to summarize the transactions with Dr. Lavery; explaining that there had been a contract for the sale of Ridgewood Subdivision, a down payment, a

breach of contract, a lawsuit, and finally a confidential settlement. Plaintiff revealed that, at the conclusion of the lawsuit, Plaintiff retained title to Ridgewood Subdivision; however, Plaintiff refused to supply any other details regarding the terms of the settlement with Dr. Lavery.

Defendants argue that Plaintiff should be required to disclose the terms of the confidential settlement, because that information is directly relevant to Plaintiff's damages claim. According to Defendants, Plaintiff has a duty to mitigate damages, and the "proceeds of any efforts to sell the Ridgewood Subdivision reduces the amount of damages" Plaintiff may recover. (ECF No. 97 at 5). In response, Plaintiff contends that the terms of the settlement agreement are not discoverable, because any monies received by Plaintiff to resolve the lawsuit were in payment for the breach of contract, and were not monies recovered in mitigation of the alleged injuries caused by Defendants. Plaintiff points out that its claim against Defendants is based upon the lost market value of the projected lots at the Ridgewood Subdivision. Consequently, Defendants have failed to demonstrate how the proceeds of a breach of contract claim could in any way mitigate that estimated loss. In reply, Defendants state that discovery is broad, and they should be permitted to explore any recovery received by Plaintiff connected with its efforts to sell Ridgewood Subdivision. Moreover, Defendants argue that allowing Plaintiff to recover damages from Dr. Lavery without reducing the claim against Defendants would amount to "a double recovery of damages, which is clearly contrary to law." (ECF No. 112 at 3).

Next, Defendants ask the court to compel Plaintiff to provide state and federal income tax returns, financial statements, and restated financial statements for the years 2011 through 2015 as set forth in Request for the Production of Documents Nos. 16, 17, and 18. (ECF No. 97 at 4-5). Once again, Defendants argue that this information is highly

relevant to Plaintiff's damages; in particular, its claim for the alleged loss of profits that Plaintiff would have realized from the sale of residential lots at the Ridgewood Subdivision. In support, Defendants cite multiple cases from various districts holding that financial records are discoverable to investigate a claim of lost profits. Plaintiff responds by maintaining that its financial documents are not relevant in this instance, because its claim for loss of profits is based upon projected potential losses associated with its inability to develop the Ridgewood Subdivision. As such, financial information detailing Plaintiff's prior, unrelated business endeavors would not tend to prove or disprove the damages in this civil action. Plaintiff further contends that Defendants have all the information they need to evaluate the merits of Plaintiff's damages claim in the expert report provided by Plaintiff.

Defendants disagree with Plaintiff's contention, arguing that, to the contrary, the expert report is completely one-sided and fails to consider factors that should be included in any lost profits calculation; such as, operational expenses and overall business profitability. Defendants insist that they need Plaintiff's financial information to complete a fair assessment of the damages claim and argue that the failure of Plaintiff's expert to consider relevant financial information does not render the information irrelevant.

### III. Analysis

With respect to Plaintiff's settlement agreement with Dr. Lavery, the parties concur that disclosure of the terms of a confidential settlement agreement may be compelled if the agreement is "reasonably calculated to lead to the discovery of admissible evidence." *Polston v. Eli Lilly and Company,* 2010 WL 2926159 at *1 (D.S.C. July 23, 2010). The parties disagree, however, on whether the Lavery settlement has any relationship to the claims and damages in this case. In arguing that the terms of the settlement agreement

4

should be disclosed, Defendants assert that Plaintiff had a duty to mitigate his damages and, therefore, any money Plaintiff received related to selling or leasing the Ridgewood Subdivision should be subtracted from the claimed damages in this action. Defendants argue that to allow otherwise would be to potentially allow Plaintiff a windfall through a double recovery. Accordingly, to ensure that a double recovery does not occur, Defendants insist that they are entitled to know the complete terms of Plaintiff's settlement with Dr. Lavery. The undersigned does not find this argument persuasive.

To provide the foundation for a double recovery, the settlement monies paid by Dr. Lavery, if any, must have been in compensation for the same acts or injuries forming the basis of Plaintiff's complaint against Defendants. *See Pennington v. Midland Credit Mgmt., Inc.*, No. 1:10CV112, 2010 WL 3187955, at *1 (E.D. Va. Aug. 9, 2010) (*citing Chisholm v. UHP Projects, Inc.,* 205 F.3d 731, 737 (4th Cir. 2000) ("The essential requirement for the 'one satisfaction rule' is that the amounts recovered by settlement and the judgment must represent common damages arising from a single, indivisible harm.")). Here, the damages flowing from Dr. Lavery's breach of contract do not appear to overlap with the projected loss of market value Plaintiff alleges as the result of its inability to develop Ridgewood Subdivision's individual residential lots.

In its response to Interrogatory No. 11, Plaintiff stated that Dr. Lavery agreed to buy the entirety of Ridgewood Subdivision for $465,000. Dr. Lavery made a down payment of $15,000 and signed a contract. The contract provided that Dr. Lavery would forfeit his down payment and be responsible for "actual damages" if he subsequently refused or neglected to complete the transaction. (ECF No. 97-1 at 25). Dr. Lavery did not purchase the Ridgewood Subdivision; accordingly, Plaintiff sued him, seeking specific performance of the sale or, in the alternative, forfeiture of the down payment and actual

damages, as called for in the contract. The lawsuit between Plaintiff and Dr. Lavery was settled, with Plaintiff retaining title to the Ridgewood Subdivision. Obviously, Plaintiff's retention of the title indicates that specific performance of the contract was not a term of the settlement agreement. In any event, had the sale proceeded, Plaintiff's benefit-of-the-bargain was capped at $80,000, the difference between the amount Plaintiff paid for the Ridgewood Subdivision and the purchase price agreed to by Dr. Lavery. It is highly unlikely that Dr. Lavery settled Plaintiff's lawsuit by paying the entire amount of Plaintiff's expected profit, and then allowed Plaintiff to keep full title to the Ridgewood Subdivision; particularly, when considering that in West Virginia, "it is a fundamental principle of the law of contracts that a plaintiff is only entitled to such damages as would put him in the same position as if the contract had been performed …. Hence, "a plaintiff is not entitled to damages beyond his actual loss attributable to defendant's breach." *Linton v. Rollo*, No. CIV. A. 1:07CV72, 2008 WL 4224816, at *8 (N.D.W. Va. Sept. 10, 2008) (*quoting Milner Hotels, Inc. v. Norfolk & Western Ry. Co.,* 822 F. Supp 341, 344-345 (S.D.W.Va.1993)). Consequently, the only logical conclusion is that Dr. Lavery forfeited his down payment and, at most, paid some nominal damages related to the creation/breach of contract. Defendants' speculation that Dr. Lavery could have paid a settlement in excess of the maximum damages reasonably available to Plaintiff is simply implausible.

Given the available information and relevant law, the undersigned concludes that Defendants have failed to show how the full terms of Plaintiff's settlement agreement are reasonably calculated to lead to the discovery of admissible evidence. (*Id.* at *2). Certainly, nothing before the court suggests that Dr. Lavery compensated Plaintiff for the value of the Ridgewood Subdivision, for Plaintiff's alleged loss of future profits, or for the

expenses associated with excavation and repairs related to Defendants' pipeline. Therefore, Defendants' motion to compel the complete terms of the confidential settlement between Dr. Lavery and Plaintiff, in response to Interrogatory No. 11, is **DENIED**. However, because improbabilities can happen, to the extent that Dr. Lavery did make a payment to Plaintiff in settlement of the breach of contract lawsuit that was ***not*** a forfeiture of the down payment, a nominal or incidental damage directly related to the costs of making the contract, or a reimbursement of attorney's fees and costs incurred in the lawsuit, Plaintiff is **ORDERED** within **fourteen (14) days** of the date of this Order to supply Defendants with the relevant portions of the settlement documents showing the amount of the payment(s) and the reason or nature of each such payment.

In regard to Defendants' request for financial documents, Defendants contend that Plaintiff's financial statements and income tax returns are relevant to its claim for future lost profits. In addition, Defendants argue that Plaintiff's expert provided a report that estimated future lost profits without considering operational expenses; such as, general overhead, Plaintiff's overall profitability, and financing costs. Defendants assert that they require Plaintiff's income tax returns and financial statements to evaluate the validity of Plaintiff's damages claim and to properly respond to the claim. Defendants cite to various cases purportedly in support of their position; however, none of these cases presents a factual scenario similar to the case at bar. In the decisions provided by Defendants, the courts were largely considering allegations of lost profits made by ongoing businesses with a profit history in the very enterprises that were the subject of the lawsuit. Here, Plaintiff is seeking a projected loss of profits from the sale of residential lots in the Ridgewood Subdivision, a venture that was not ongoing at the time the dispute arose between the parties, and that has never been an ongoing business. Accordingly, no

7

historical or current data exists demonstrating profits from the sale of residential lots at the Ridgewood Subdivision.

Nevertheless, Plaintiff's prior experience with the development of residential subdivisions would be relevant to its claim for damages in this case. As Defendants point out, Plaintiff's historical data showing overhead expenses, financing costs, and profitability in similar ventures could provide useful and admissible evidence with which to evaluate Plaintiff's expert report and to prepare a defense. Therefore, Defendants' Motion to Compel Request for the Production of Documents Nos. 17 and 18 is **GRANTED** to the extent that Plaintiff has financial statements (or portions thereof), or similar documents, for the years 2011 through 2015 that reflect Plaintiff's operational expenses, losses, and profits related to the development of residential subdivisions. Plaintiff is **ORDERED** to produce those documents to Defendants within **fourteen (14) days** of the date of this Order. If no such documents exist, then Plaintiff shall file a supplemental answer indicating that no such documents exist. As to Plaintiff's financial statements in general, the undersigned does not find that Plaintiff's experience, profitability, overhead expenses, or financial records as they relate to other types of business operations are particularly relevant to its claim for projected future lost profits in this action. For that reason, Defendants' request for all financial statements is **DENIED**.

The undersigned also **DENIES** Defendants' request for Plaintiff's tax returns at this time. Although tax returns are "not privileged from civil discovery … judicial consensus exists that, as a matter of policy, great caution should be exercised in ordering the disclosure of tax returns." *Buford v. Ammar's Inc.*, No. 1:14CV00012, 2014 WL 7530833, at *1–2 (W.D. Va. Nov. 24, 2014) (*quoting Terwilliger v. York Int'l Corp.,* 176 F.R.D. 214, 216 (W.D.Va.1997)). Generally, the production of a tax return is compelled

8

only when: "(1) the tax return is relevant to the subject matter in dispute; and (2) a compelling need exists for the return, because the information sought is not obtainable from other sources." *Id.* (*quoting Terwilliger,* 176 F.R.D. at 217). If financial records exist reflecting Plaintiff's history and experience in similar residential development ventures, then Defendants should learn from that financial information whether there is any data that can be used for comparison and extrapolation. However, at this juncture, no compelling reason for the production of tax returns has been demonstrated by Defendants.

Wherefore, for the forgoing reasons, Defendants' Motion to Compel is **GRANTED, in part**, and **DENIED, in part**. The Clerk is directed to provide a copy of this Order to counsel of record.

**ENTERED:** August 9, 2016

_____
Cheryl A. Eifert
United States Magistrate Judge