IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**SCOTT HUTCHISON ENTERPRISES, INC.,**

      **Plaintiff,**

v.                                                                                    Case No.:  3:15-cv-13415

**CRANBERRY PIPELINE CORPORATION and
CABOT OIL & GAS CORPORATION,**

      **Defendants.**

**MEMORANDUM OPINION and ORDER**

Pending before the court are Defendants' Motion for Protective Order Regarding Plaintiff's FRCP 30(b)(6) Notices of Corporate Representative Deposition (ECF No. 133) and Plaintiff's Motion to Compel Discovery Responses of Defendants Cabot Oil & Gas Corporation and Cranberry Pipeline Corporation. (ECF No. 136). On the 19th day of September, 2016, the parties appeared, by counsel, for oral argument on the pending motions. Having considered the written materials and the arguments, the court **GRANTS** the motion for protective order, as set forth below, and **GRANTS** the motion to compel, as set forth below.

**I.  Relevant Facts**

This civil action involves a gas pipeline owned by Defendants, which is located on real property purchased by Plaintiff for the purpose of developing a residential subdivision ("Ridgewood Subdivision"). The pipeline ("C-1004 pipeline") is 13 miles in length, crosses over land in both Wayne and Cabell counties, and was constructed by Owens Illinois Glass Company in approximately 1962. In 1970, Defendants, or a

1

subsidiary or predecessor of Defendants, purchased the C-1004 pipeline and has used it to transport gas since its purchase.

The dispute between the parties arose in 2013 when Plaintiff began improvements on an existing roadway in the Ridgewood Subdivision, which involved excavating the earth above and around the pipeline. When Defendants learned of the excavation activities, they requested that Plaintiff cease work, fearing that the pipeline would rupture and potentially cause bodily injury, or even death. Plaintiff ceased operations, and the property has been sitting, undeveloped, since that time. Plaintiff claims that Defendants' pipeline renders the Ridgewood Subdivision undevelopable. Consequently, Plaintiff asserts a variety of claims against Defendants, including trespass, unjust enrichment, and negligence. In turn, Defendants have filed a counterclaim, asserting *inter alia* that they have a prescriptive easement for the portion of the C-1004 pipeline located in the Ridgewood Subdivision. Defendants claim that they did not receive permission from Plaintiff or any prior owner of the Ridgewood Subdivision to place, operate, or maintain the C-1004 pipeline; that they have operated the C-1004 pipeline continuously for more than ten years; that the operation of the C-1004 pipeline has been open and notorious; and that the operation of the C-1004 pipeline has been adverse to Plaintiff and his predecessors in title to the Ridgewood Subdivision.

In the course of discovery, Plaintiff filed interrogatories and documents requests, seeking production of the evidence relied upon by Defendants to support their prescriptive easement claim. In response, Defendants produced 4,447 pages of documents maintained in a file labeled the C-1004 "pipeline file." The pipeline file was represented to contain all documents in Defendants' possession related to construction, operation, maintenance, repair, and relocation of the C-1004 pipeline. Upon receiving

and reviewing the pipeline file, Plaintiff issued notices of 30(b)(6) deposition demanding that each defendant supply a corporate designee to testify regarding the documents produced from the pipeline file and explain how those documents were responsive to Plaintiff's original discovery requests. A week later, Plaintiff issued a second set of deposition notices asking that Rule 30(b)(6) representatives also testify regarding the due diligence that Defendants performed prior to purchasing the C-1004 pipeline, and the purchase price, costs, terms, and conditions of Defendants' acquisition of the C-1004 pipeline. In addition, Plaintiff filed a second set of discovery requests asking Defendants if they had paid any money or provided goods or services in exchange for any right-of-way or easement for the C-1004 pipeline, and to identify any right-of way agreements or easements Defendants had obtained for any part of the C-1004 pipeline.

With respect to the first set of deposition notices, Defendants agreed to produce Rule 30(b)(6) designees to testify regarding the relevance of the documents to their prescriptive easement claim, but argued that it would be overly burdensome to prepare witnesses to testify "regarding" the 4,447 pages unless Plaintiff could specify in advance the particular documents and issues that they expected to raise with the witnesses. In response, Plaintiff declined to further limit the topics to be covered in the Rule 30(b)(6) deposition, asserting that (1) the topics were already narrow and (2) the documents had been produced by Defendants; therefore, they should be familiar enough with them to easily prepare their witnesses. As to the second set of notices, Defendants refused to produce any witnesses, claiming that the topics were irrelevant and burdensome, given that the C-1004 pipeline was purchased more than forty years ago. Moreover, Defendants argued that Plaintiff was not entitled to information regarding the entire 13 miles of the C-1004 pipeline, because only the Ridgewood Subdivision portion was at issue. Plaintiff

replied that Defendants' due diligence and the circumstances surrounding the acquisition of the entire C-1004 pipeline were clearly relevant; consequently, Defendants should be compelled to produce the witnesses as requested. When the parties could not resolve these disagreements, Defendants filed a motion for protective order related to the Rule 30(b)(6) depositions, and Plaintiff filed a motion to compel the second set of discovery requests.

## II. Relevant Law

Federal Rule of Civil Procedure 26(b) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case ...." Fed. R. Civ. P. 26(b)(1). Rule 26(b)(1) does not exactly define relevancy, although information certainly is relevant if it logically relates to a party's claim or defense. Although the rule was recently amended to remove language permitting the discovery of "any matter relevant to the subject matter involved in the action" for good cause, and "relevant information ... reasonably calculated to lead to the discovery of admissible evidence," the rule in its current form still contemplates the discovery of information relevant to the subject matter involved in the action as well as relevant information that would be inadmissible at trial. Fed. R. Civ. P. 26(b)(1), advisory committee notes to 2015 amendment. Accordingly, it remains true that "relevancy in discovery is broader than relevancy for purposes of admissibility at trial."[1] *See Amick v. Ohio Power Co.*, No. 2:13-cv-6593, 2013 WL 6670238, at *1 (S.D.W.Va. Dec. 18, 2013). Moreover, notwithstanding Rule 26(b)(1)'s recent amendment placing an emphasis on

---

[1] Federal Rule of Evidence 401 provides that "evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

the proportionality of discovery, the discovery rules, including Rule 26, remain subject to "broad and liberal construction." *Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. Jan. 25, 2016); *see also CTB, Inc. v. Hog Slat, Inc.*, No. 7:14-cv-157, 2016 WL 1244998, at *3 (E.D.N.C. Mar. 23, 2016).

Simply because information is discoverable under Rule 26, however, "does not mean that discovery must be had." *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005) (citing *Nicholas v. Wyndham Int'l, Inc.,* 373 F.3d 537, 543 (4th Cir. 2004)). For good cause shown under Rule 26(c), the court may issue a protective order, restricting or prohibiting discovery that seeks relevant information when necessary to protect a person or party from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c). To succeed under the "good cause" standard of Rule 26(c), a party moving to resist discovery on the grounds of burdensomeness and oppression must do more to carry its burden than make conclusory and unsubstantiated allegations. *Convertino v. United States Department of Justice,* 565 F. Supp.2d 10, 14 (D.D.C. 2008) (the court will only consider an unduly burdensome objection when the objecting party demonstrates how discovery is overly broad, burdensome, and oppressive by submitting affidavits or other evidence revealing the nature of the burden); *Cory v. Aztec Steel Building, Inc.,* 225 F.R.D. 667, 672 (D. Kan. 2005) (the party opposing discovery on the ground of burdensomeness must submit detailed facts regarding the anticipated time and expense involved in responding to the discovery which justifies the objection); *Bank of Mongolia v. M & P Global Financial Services, Inc.,* 258 F.R.D. 514, 519 (S.D. Fla.2009) ("A party objecting must explain the specific and particular way in which a request is vague, overly broad, or unduly burdensome. In addition, claims of undue burden should be supported by a statement (generally an affidavit) with specific

information demonstrating how the request is overly burdensome"). The party resisting discovery, not the party seeking discovery, bears the burden of persuasion. *See Kinetic Concepts, Inc. v. ConvaTec Inc.,* 268 F.R.D. 226, 243–44 (M.D.N.C. 2010) (citing *Wagner v. St. Paul Fire & Marine Ins. Co.,* 238 F.R.D. 418, 424–25 (N.D. W.Va. 2006). To insure that discovery is sufficient, yet reasonable, district courts have "substantial latitude to fashion protective orders." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).

### III. <u>Analysis</u>

Defendants seek a protective order limiting the scope of the first Rule 30(b)(6) notices of deposition. Defendants agree that witnesses should be offered to testify about the relevancy of the documents produced in discovery, but argue that to prepare witnesses to speak to the underlying events and circumstances surrounding the documents—some of which are more than forty years old—would be unduly burdensome. During the hearing, it became clear to the undersigned that Plaintiff never intended to question the corporate representatives about the underlying events and circumstances that gave rise to creation of each document. Instead, Plaintiff intended to explore the reasons why Defendants believed each document was relevant to the claims and defenses in this case and how each document supposedly proved Defendants' alleged prescriptive easement. In fact, the parties actually agreed on the purpose and scope of the depositions.

Nevertheless, Defendants maintain that a protective order is necessary to ensure that Defendants are not expected to prepare witnesses beyond the expressed relevance of the documents. For that reason, and bearing in mind the significant obligation of a party to properly prepare its Rule 30(b)(6) designees, the undersigned **GRANTS** the motion for a protective order. Defendants shall produce designees that are prepared to testify

regarding the relevancy of the pipeline file documents and the role the documents play in supporting Defendants' claims and defenses. Conversely, Defendants are not required to prepare the witnesses to testify regarding the factual circumstances, events, or details underlying the documents, or the various reasons for creation of the documents.

Plaintiffs' motion to compel and Defendants' motion for protective order concerning the second set of Rule 30(b)(6) notices can be addressed together. Plaintiffs seek information pertinent to Defendants' due diligence and acquisition of the C-1004 pipeline. Specifically, Plaintiffs want to know whether Defendants obtained rights-of-way or easements on any parcels of property over which the C-1004 pipeline traverses; whether Defendants purchased the pipeline from Owens Illinois Glass Company subject to easements and rights-of-way; and what due diligence Defendants performed in ensuring that the C-1004 pipeline came with written permission to cross land that did not belong to Defendants or Owens Illinois Glass Company, their predecessors and successors. Defendants contend that Plaintiff should only be permitted to discover information related to the portion of the C-1004 pipeline that crosses the Ridgewood Subdivision. The undersigned disagrees with Defendants. As Plaintiff points out, the steps that Defendants took to obtain rights-of-way and easements for the entire pipeline may uncover admissible circumstantial evidence contrary to their claim of a prescriptive easement. For example, if the evidence demonstrates that Defendants obtained written easements or rights-of-way from every other property owner in the remaining 12-plus-mile length of the C-1004 pipeline, which allowed it to operate over private property, then even in the absence of similar paperwork for the Ridgewood Subdivision, Plaintiff can argue that Defendants must have taken the same steps with the prior owners of the land now identified as the Ridgewood Subdivision. Clearly, the evidence is relevant.

Defendants contend, however, that the information would be overly burdensome to collect and provide. Nonetheless, during the hearing, Defendants admitted that they have documents pertaining to easements, right-of-way agreements, licenses, and other documentation of written permission for placement of the C-1004 pipeline on each parcel of land that it traverses located in a "land file," which have not been produced to Plaintiff. Defendants also indicated that this land file is likely less voluminous than the pipeline file. Accordingly, producing a copy of the land file is not unduly burdensome. Thus, Defendants are **ORDERED** to produce to Plaintiff within **seven (7) days** (from the date of the hearing) a copy of all such documents contained in the land file. Because Plaintiff's subsequent review of the land file may significantly limit, or even render unnecessary, the second notices of Rule 30(b)(6) depositions, the parties are **ORDERED** to meet and confer upon completion of Plaintiff's review and attempt to agree on the scope of any depositions to be taken pursuant to the second notices. As the parties have agreed that the Rule 30(b)(6) depositions will be taken at a location convenient for Defendants—most likely in Pittsburgh where Defendants have their home offices—the court **ORDERS** the parties to do so.

The Clerk is instructed to provide a copy of this Order to counsel of record.

**ENTERED**: September 20, 2016

_____
Cheryl A. Eifert
United States Magistrate Judge