**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**SCOTT HUTCHISON ENTERPRISES, INC.,**

      **Plaintiff,**

**v.**                                                        **Case No.:  3:15-cv-13415**


**CRANBERRY PIPELINE CORPORATION and
CABOT OIL & GAS CORPORATION,**

      **Defendants.**


**MEMORANDUM OPINION and ORDER**

On November 18, 2016, the parties appeared for a hearing on Defendants'
Renewed Motion to Compel Production of Plaintiff's Financial Information, (ECF No.
181), and Plaintiff's Motion for Sanctions, (ECF No. 182). Having considered the written
materials and the arguments presented by counsel, the Court **DENIES** Defendants'
motion to compel and **GRANTS** Plaintiff's motion for sanctions as set forth below.

## I.    **Relevant Facts**

This civil action involves a gas pipeline owned by Defendants, which is located on
real property purchased by Plaintiff for the purpose of developing a residential
subdivision ("Ridgewood Subdivision"). The pipeline (also referred to as the "C-1004
pipeline") is 13 miles in length, crosses over land in both Wayne and Cabell counties,
and was constructed by Owens Illinois Glass Company in approximately 1962. In 1970,
Defendants, or a subsidiary or predecessor of Defendants, purchased the C-1004
pipeline and has used it to transport gas since its purchase.

1

The dispute between the parties arose in 2013 when Plaintiff began improvements on an existing roadway in the Ridgewood Subdivision, which involved excavating the earth above and around the pipeline. When Defendants learned of the excavation activities, they requested that Plaintiff cease work, fearing that the pipeline would rupture and potentially cause bodily injury, or even death. Plaintiff ceased operations, and the property has been sitting, undeveloped, since that time. Plaintiff alleges that Defendants' pipeline renders the Ridgewood Subdivision undevelopable. Consequently, Plaintiff has asserted a variety of claims against Defendants, including trespass, unjust enrichment, and negligence. In turn, Defendants filed a counterclaim, asserting *inter alia* that they have a prescriptive easement for the portion of the C-1004 pipeline located in the Ridgewood Subdivision. Defendants claim that they did not receive permission from Plaintiff or any prior owner of the Ridgewood Subdivision to place, operate, or maintain the C-1004 pipeline; that they have operated the pipeline continuously for more than ten years; that the operation of the C-1004 pipeline has been open and notorious; and that the operation of the pipeline has been adverse to Plaintiff and his predecessors in title to the Ridgewood Subdivision.

## II. Defendants' Renewed Motion to Compel Production of Plaintiff's Financial Information

During the course of discovery, Defendants moved to compel production of Plaintiff's state and federal income tax returns, financial statements, and restated financial statements for the years 2011 through 2015. Defendants argued that the information was highly relevant to Plaintiff's damages; in particular, its claim for the alleged loss of profits that Plaintiff would have realized from the sale of residential lots at the Ridgewood Subdivision.

2

Ultimately, the Court issued an Order compelling Plaintiff to produce its "financial statements (or portions thereof), or similar documents, for the years 2011 through 2015 that reflect Plaintiff's operational expenses, losses, and profits related to the development of residential subdivisions." (ECF No. 123 at 8). The Court denied the motion insofar as it sought production of financial records for Plaintiff's other business operations, such as its car washes, noting that Plaintiff was not claiming a loss of past profits; rather, it was seeking the loss of future profits related only to the Ridgewood Subdivision, an anticipated but not yet ongoing venture. (*Id.*). The Court also denied the request for Plaintiff's tax returns, stating that "[i]f financial records exist reflecting Plaintiff's history and experience in similar residential development ventures, then Defendants should learn from that financial information whether there is any data that can be used for comparison and extrapolation," but "at this juncture, no compelling reason for the production of tax returns has been demonstrated by Defendants." (*Id.* at 9).

Defendants have now renewed the foregoing motion to compel on the basis that Plaintiff's "overall financial information is directly relevant and necessary to the calculation of future lost business profits because certain expenses used to calculate the company's profits or losses are not reflected on the income statement produced," including "the money that [Plaintiff] paid for the property itself and the company's general overhead." (ECF No. 181 at 3). Defendants argue that other critical information is not reflected in the financial records already produced. Specifically, Defendants contend that the records do not demonstrate how Plaintiff accounts for depreciation of real property, in the event Plaintiff takes depreciation expense related to the Ridgewood Subdivision.

3

Defendants also explain that they need to review all of the requested financial records to advance their argument that Plaintiff's general overhead expenses should be distributed evenly across the company's business operations, including an allocation to the Ridgewood Subdivision, which would reduce Plaintiff's future lost profits in this action. Defendants claim that, otherwise, Plaintiff could attribute such expenses to business operations other than the Ridgewood Subdivision and artificially inflate the future lost profits calculation of that component of the business. Defendants contend that because Plaintiff—a corporation with all of its business enterprises under one umbrella—is seeking loss profits, Defendants should be able to review the company's overall financial information; not just portions of information related to the Ridgewood Subdivision.

In response, Plaintiff argues that Defendants are incorrectly treating the claimed damages as a loss of past income suffered by an existing business, as opposed to a loss of potential profits from the inability to develop a specific property. (ECF No. 215 at 5). Plaintiff asserts that Defendants do not require additional financial documents to determine the purchase price of the property because it is stated in the deed, which was produced to Defendants. (*Id.* at 2). Further, regarding how the purchase price will factor into future lost profits, Plaintiff points out that it produced to Defendants income statements from Island Estates, the only other residential subdivision developed by Plaintiff. (*Id.* at 3). According to Plaintiff, these income statements show how Plaintiff allocated corporate overhead and expenses to its sole business venture involving the development of a residential subdivision. Because the financial records of Island Estates were prepared before this litigation, Plaintiff argues that they are inherently reliable and accurately reflect the manner by which Plaintiff would account for general overhead and

expenses in the Ridgewood Subdivision. Plaintiff contends that its Rule 30(b)(6) witness, Laya Hutchinson, testified regarding the Island Estates' income statements, explaining that Plaintiff deducted a portion of the property's purchase price as an expense from the sale of each lot. She further testified that a similar deduction would be taken in the case of the Ridgewood Subdivision when the land was developed and the lots were sold. (*Id.*). As far as general overhead, Plaintiff indicates that all of its past overhead expenses relate solely to the corporation's other business ventures; because Plaintiff has not started to develop Ridgewood Subdivision, there are no overhead expenses for that property. (*Id.* at 1). Plaintiff adds that its expert witness took into account the estimated costs of developing Ridgewood Subdivision; therefore, Defendants have all of the relevant financial information.

In reply, Defendants state that their purpose in seeking the financial information is to ascertain how Plaintiff accounted for the purchase price of the property in calculating the company's profits or losses; for example, Defendants state that "if [Plaintiff] is taking depreciation deductions on the property, that would be relevant for how the company could calculate profit or loss in the future upon the sale of the property." (ECF No. 255 at 1). Regarding general overhead, Defendants state that Plaintiff "should not be permitted to 'cherry pick' which aspect of the company it wishes to advance to recover lost profits and simultaneously shield the rest of the company from scrutiny." (*Id.* at 2). Without access to this financial information, Defendants allege that Plaintiff can manipulate the alleged profit on the subject property by shifting all overhead expenses to other aspects of the company's operations. (*Id.*).

During oral argument, Defendants again raised the possibility that Plaintiff was depreciating the property and further argued that Plaintiff would have to allocate some

of its general business overhead to the Ridgewood Subdivision, both of which would affect the projected loss of profits. Defendants argued that without the remaining financial information, they were unable to effectively cross-examine the experts on these considerations. In response, Plaintiff's counsel represented that Plaintiff was not depreciating the property and did not expect to incur any additional overhead to develop the subdivision, because Scott Hutchinson intended to do the labor himself. In any event, Plaintiff indicated that the costs related to developing the property, even those that were associated with the work Mr. Hutchinson intended to perform, were accounted for in the engineering expert's report.

Considering these arguments, the undersigned finds that Defendants do not provide any new information or testimony to support their renewed motion for financial information. As Plaintiff emphasizes, Defendants have received income statements and financial documentation related to all of Plaintiff's business ventures involving residential subdivisions. Moreover, Defendants have had an opportunity to depose a Rule 30(b)(6) witness on the corporation's financial practices. Defendants have received the deed to Ridgewood Subdivision, which shows the purchase price, as well as expert reports outlining the estimated costs of developing the property and the estimated sale price of each lot. Defendants have obtained the settlement agreement between Dr. Lavery and Plaintiff reflecting any income attributable to Plaintiff related to the Ridgewood Subdivision. Thus, Defendants possess information regarding the purchase price of the Ridgewood Subdivision, any income associated with the subdivision, the method by which Plaintiff allocated and accounted for costs and expenses incurred in developing a similar residential subdivision, the projected costs and expenses associated with developing the Ridgewood Subdivision, the projected sale price of the lots, and the

6

damages associated with the interruption in the development process. With respect to overhead expenses, Defendants' claims are speculative at best. Defendants provide no factual basis to establish the relevancy of Plaintiff's past overhead expenses. For example, Defendants provide no evidence that Plaintiff considered such expenses in its previous residential development project, Island Estates. In fact, the parties' arguments suggest the contrary. Further, Defendants offer no testimony, expert opinions, or evidence of any kind to demonstrate that Plaintiff's current operating expenses should be attributed to the Ridgewood Subdivision.

Defendants are free to challenge the amounts projected, the method of allocation, the categories of expenses claimed, or any other portions of Plaintiff's calculations through cross examination, expert testimony, or whatever tactic they see fit. However, they have failed to demonstrate that they are likely to find within Plaintiff's remaining financial documents any undiscovered information that would help them do so. Thus, for the reasons stated above, the Court **DENIES** Defendants' Renewed Motion to Compel Production of Plaintiff's Financial Information.

**III.**     <u>**Plaintiff's Motion for Sanctions**</u>

    **A. The Parties' Positions**

Addressing the other pending motion, Plaintiff filed interrogatories and document requests, seeking evidence relied upon by Defendants to support their prescriptive easement claim. In particular, Plaintiff asked Defendants to identify evidence showing that the placement of the C-1004 pipeline through the Ridgewood Subdivision was without permission and was adverse or hostile to the ownership rights of Plaintiff or its predecessors. Plaintiff also requested the production of any documents supporting the proposition that Defendants had a prescriptive easement related to the

C-1004 pipeline's placement in the Ridgewood Subdivision. (ECF No. 182-1 at 2-3).

In response, Defendants ultimately produced 4,447 pages of documents maintained in a file labeled the C-1004 "pipeline file." Upon receiving and reviewing the pipeline file, Plaintiff issued notices of Rule 30(b)(6) deposition, demanding that the defendants supply a corporate designee to testify regarding the pipeline file documents and explain how those documents were responsive to Plaintiff's original discovery requests. After receiving the notices, Defendants' counsel wrote a letter to Plaintiff's counsel, objecting to the scope of the proposed depositions. Defendants advised that the pipeline file contained all documents in Defendants' possession related to construction, operation, maintenance, repair, and relocation of the C-1004 pipeline. For the first time, defense counsel explained to Plaintiff's counsel that the entire pipeline file was produced, not because it contained direct evidence of adverse or hostile possession, but rather, because it did not contain any evidence of permission to lay the C-1004 pipeline across the Ridgewood Subdivision. Thus, the *absence* of documentation was proof that neither Defendants, nor their predecessors, had permission to place the pipeline on Plaintiff's property. Further, defense counsel indicated that the file was produced to demonstrate continuous and open use of the pipeline over the years.

Notwithstanding this clarification, Defendants agreed to produce a Rule 30(b)(6) designee to testify about how the pipeline file documents were relevant to their prescriptive easement claim. However, they refused to produce a witness to testify "regarding" the documents without further specificity as some of the documents were decades old and were created before Defendants owned and operated the pipeline. When the parties were unable to agree on the scope of inquiry, Defendants filed a motion for a protective order. In the motion, Defendants reiterated their agreement to produce a Rule

30(b)(6) witness to testify about the pipeline file documents and their relevance to the issues of permission, adverse possession, and continuous and open use of the property at issue. Still, Defendants argued that it would be overly burdensome to prepare a 30(b)(6) witness to testify "regarding" all 4,447 pages of the pipeline file. Defendants asked the Court to place parameters on the scope of the questioning and to require Plaintiff's counsel to specify in advance the particular documents and issues that they expected to raise with the witness.

The undersigned held a hearing on the motion for protective order on September 19, 2016. During the hearing, Plaintiff's counsel indicated that they had reviewed the voluminous production and wanted to explore the reasons why Defendants believed the documents were relevant and how each document supposedly proved Defendants' alleged prescriptive easement. Plaintiff's counsel confirmed that they never intended to question the corporate representative about factual events and circumstances underlying the creation of the documents. Consequently, Defendants agreed to the proposed line of questioning, but maintained that a protective order was still necessary to ensure that Defendants were not expected to prepare witnesses beyond the expressed relevance of the documents. For that reason, and bearing in mind the significant obligation of a party to properly prepare its Rule 30(b)(6) designee, the Court granted the Motion for Protective Order, placing the following burden on Defendants and limitation on the scope of inquiry: "Defendants shall produce designees that are prepared to testify regarding the relevancy of the pipeline file documents and the role the documents play in supporting Defendants' claims and defenses. Conversely, Defendants are not required to prepare the witnesses to testify regarding the factual circumstances, events, or details underlying the documents, or the various reasons for

creation of the documents." (ECF No. 162 at 6-7).

Defendants designated Cabot Oil & Gas Corporation's compliance and corrosion engineer, Robert L. Barrett, as their Rule 30(b)(6) witness, and his deposition was taken on October 6, 2016. (ECF No. 182-3). Thereafter, Plaintiff filed the instant Motion for Sanctions, arguing that sanctions are warranted under (1) Fed. R. Civ. P. 37 because Mr. Barrett was not a properly prepared or knowledgeable 30(b)(6) witness and (2) Fed. R. Civ. P. 26(g) because Defendants' counsel improperly verified that he reviewed the "over 4,400 pages of documents" produced to Plaintiff and certified that they were responsive to the discovery requests. (ECF No. 183 at 1). Plaintiff attached a statement of fees and expenses, indicating that it had incurred a total $19,493.32 for its counsel to review the document production and to take the Rule 30(b)(6) deposition. (ECF No. 182-2).

In opposition to Plaintiff's Motion, Defendants argue that sanctions are not warranted because (1) Plaintiff did not attempt to confer with Defendants before filing the motion as required by Local Rule of Civil Procedure 37.1(b); (2) Defendants did not violate a court order; and (3) the identification of the pipeline file documents as responsive to the discovery requests was "eminently reasonable" under Rule 26(g). (ECF No. 237 at 10). Defendants disagree that Mr. Barrett was not adequately knowledgeable or qualified to serve as their Rule 30(b)(6) witness. Further, Defendants assert that Plaintiff has no right to decide who is the proper person to serve as Defendants' Rule 30(b)(6) designee. (*Id.*). Defendants argue that Mr. Barrett testified consistently with their position that the absence of permission in the pipeline file supported their prescriptive easement claim; further, Defendants state that Mr. Barrett testified that the pipeline documents show the continuous operation of the pipeline as a whole since its construction in 1960. (*Id.* at 12). As far as the adequacy of Mr. Barrett's preparation,

Defendants contend that three to four hours of document review was reasonable given the limited scope of the deposition topics and the fact that Mr. Barrett regularly reviewed pipeline files. (*Id.* at 13).

Regarding Mr. Barrett's testimony and the responsiveness of the documents to Plaintiff's discovery requests, Defendants argue that Plaintiff is making the same type of circumstantial evidence argument that they claim is improper from Defendants. (*Id.* at 16). While Defendants claim that the absence of permission in the file shows that permission did not exist, Plaintiff argues that permission for other sections of the pipeline shows that Defendants must have had permission for the pipeline to traverse the property at issue. (*Id.*). Therefore, Defendants assert that the pipeline file documents are relevant as circumstantial evidence. (*Id.*). Further, Defendants indicate that the file is relevant because the pipeline operated as a linear unit and documents concerning construction, operation, maintenance, repair, or relocation of any section of it were relevant to show the continuous, open, and adverse use of the section of the pipe on the subject property. (*Id.*). Finally, Defendants point to the fact that they discovered documents such as deeds, easements, and licenses in 11 other pipeline files; therefore, they argue that the absence of such documents in the C-1004 pipeline file indicates a lack of any type of permission.

With respect to sanctions, Defendants maintain that Plaintiff's statement of attorney's fees is insufficient and that the fees and expenses were not reasonably necessary. (*Id.* at 17). Defendants focus on the fact that Plaintiff's attorney's fees were not identified by date and that Plaintiff's counsel flew a private plane and rented a car for the 30(b)(6) deposition as opposed to driving. (*Id.*). Finally, Defendants claim that the fees and expenses were unnecessary because Plaintiff already knew Defendants'

11

position and "did not have to conduct the deposition to find out." (*Id.*).

## B. Analysis

### *Lack of Certification under L. R. Civ. P. 37.1*

As an initial matter, the undersigned addresses Defendants' argument that Plaintiff's request for sanctions should be denied because Plaintiff failed to comply with L. R. Civ. P. 37.1(b), which requires parties to make a good faith effort to confer in person or by telephone to narrow the areas of disagreement before filing a discovery motion, including a motion for sanctions. Certainly, the failure of a party to comply with L. R. Civ. P. 37.1(b) may provide a basis for the presiding judicial officer to deny a motion for sanctions. *See HSBC Bank USA, Nat. Ass'n v. Resh*, No. 3:12–cv–00668 2013 WL 2177873, at *6 (S.D. W. Va. May 20, 2013). However, a court has discretion in managing its discovery issues and must address motions for sanctions on a case-by-case basis. Here, the undersigned finds that the Local Rule does not preclude an award of sanctions for two reasons. First, unlike other sections of Rule 37, neither Rule 37(b) nor Rule 26(g) requires a meet-and-confer session before a party may request sanctions. Consequently, certification of good faith efforts to meet and confer are not a condition precedent under these federal rules to an award of sanctions. Second, the parties have already conferred about the document production and the scope of the Rule 30(b)(6) deposition, and these matters were the subject of a discovery hearing. Therefore, the parties' fundamental disagreements were already narrowed, fully briefed, and argued prior to the Rule 30(b)(6) deposition. It is highly improbable that additional discussion between Plaintiff's counsel and Defendants' counsel regarding Plaintiff's request for sanctions would have narrowed the issues in dispute any further.

### *Sanctions under Rule 26(g)*

Plaintiff requests sanctions under Rule 26(g) on the basis that Defendants improperly certified that the 4,447 pages of documentation produced to Plaintiff were responsive to Plaintiff's discovery requests. Federal Rule of Civil Procedure 26(g) provides that discovery responses must be signed by the responding party or party's attorney certifying to the best of the person's "knowledge, information, and belief formed after reasonable inquiry" that the discovery responses are, in relevant part, "consistent with [the Federal Rules of Civil Procedure]," "not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," and "neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action." Fed. R. Civ. P. 26(g)(1)(B). The Rule further provides that "[i]f a certification violates this rule without substantial justification," the court "must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both," which "may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Fed. R. Civ. P. 26(g)(3).

In this case, Plaintiff served the following discovery requests:

> **INTERROGATORY NO. 6:** Please identify each and every piece of evidence this Defendant has showing the initial and continued placement of the C-1004 pipeline within the Ridgewood Subdivision occurred without the permission of any and all predecessors in interest in the property, or the Plaintiff in this action.

> **ANSWER:** Defendant is in the process of gathering documents reflecting the installation and operation of the C-1004 pipeline. Other than the authorization from the City of Huntington described in response to Interrogatory No. 5,

Defendant is unaware of any documentation that reflects permission granted by Plaintiff or any prior owner of the Ridgewood Subdivision.

**FIRST SUPPLEMENTAL ANSWER:** See documents bearing bates numbers CABOT 00029 – 004476 set forth in the enclosed disc.

**INTERROGATORY NO. 7:** What evidence does this Defendant rely on to show that the placement of the C-1004 pipeline within the Ridgewood Subdivision was adverse, or hostile to the true ownership interest of the predecessors in interest to the property, or the plaintiff in this action.

**ANSWER:** Defendant has not identified all evidence on which it will rely to show that the placement of the C-1004 pipeline within the Ridgewood Subdivision was adverse, or hostile to the true ownership interest of the predecessors in interest to the property, or the plaintiff in this action. Defendant has operated the C-1004 pipeline for over fifty years, including the portion of the pipeline that runs along a road known as Woodland Drive located in the Ridgewood Subdivision. The pipeline was identified by multiple markers in various locations in the Ridgewood Subdivision.

**FIRST SUPPLEMENTAL ANSWER:** See documents bearing bates numbers CABOT 00029 – 004476 set forth in the enclosed disc.

**RFP NO. 6:** Copies of all documents of any type which support the propositions that this Defendant has any type of prescriptive easement or right of way which allows the at issue pipeline to run across the real estate owned by the Plaintiff.

**RESPONSE:** See documents bearing bates numbers CABOT 000006-000028. Defendant is still in the process of searching for and gathering available documents reflecting the installation and operation of the C-1004 pipeline. Other than the authorization from the City of Huntington described in response to Interrogatory No. 5, Defendant is unaware of any documentation that reflects permission granted by Plaintiff or any prior owner of the Ridgewood Subdivision.

**FIRST SUPPLEMENTAL RESPONSE:** See documents bearing bates numbers CABOT 000029 – 004476 set forth in the enclosed disc.

14

(ECF No. 237 at 2-3).

As shown above, Defendants initially provided reasonable responses to Plaintiff's discovery requests. Moreover, the notation that Defendants were still searching for relevant information was an appropriate way to notify Plaintiff that a search was ongoing and additional materials might be forthcoming. However, Defendants' supplemental responses—particularly to the interrogatories—simply did not comply with the requirements or spirit of the federal discovery rules, and for that reason, the certification of the supplemental responses violated Rule 26(g)(1)(B).

Federal Rule of Civil Procedure 33(d) allows a party to supply business records in response to an interrogatory "if the burden of deriving or ascertaining the answer will be substantially the same for either party." Fed. R. Civ. P. 33(d). When business records are produced in response to an interrogatory, the producing party must specify the records to be reviewed, "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d)(1). As indicated by the advisory notes to Rule 33, a responding party abuses the process by directing an interrogating party to a mass of records, without specifying by category and location the relevant documents. *See* Fed. R. Civ. P. 33 advisory committee note to 1980 amendment. Similarly, when answering a request for the production of documents under Rule 34, the producing party must respond to each requested item or category separately, so that the interrogating party can discern which documents apply to which request. Fed. R. Civ. P. 34(b)(2)(B).

Here, Plaintiff asked in interrogatory No. 6 for the identification of evidence that showed the C-1004 pipeline was placed through the Ridgewood Subdivision without

permission. Interrogatory No. 7 sought the identity of evidence relied upon by Defendants to demonstrate its adverse or hostile possession of the Ridgewood Subdivision property. In response to both interrogatories, Defendants attached the entire pipeline file. Defendants did not identify which particular documents in the file answered which interrogatory, did not provide any explanation for the relevance of the complete file to each interrogatory, and did not specify where in the pipeline file responsive information could be located. Defendants likewise attached the entire pipeline file in response to the request for production of all documents supporting Defendants' claim of a prescriptive easement.

Defendants do not dispute Plaintiff's contention that *none* of the 4,447 pages in the pipeline file directly discusses permission or lack of permission for placement of the C-1004 pipeline, adverse possession of the Ridgewood Subdivision, or open and continuous use of the C-1004 pipeline through the Ridgewood Subdivision. Rather, Defendants contend that they produced the entire pipeline file precisely because it lacked any direct evidence concerning permission for placement of the pipeline. Defendants explain that any permission obtained for placement of the C-1004 pipeline through the Ridgewood Subdivision would have been placed in the pipeline file. Consequently, the absence of such documentation is "circumstantial evidence" that permission was never obtained.

The undersigned finds two fundamental flaws with Defendants' post-production explanation for their supplemental interrogatory answers. First, Defendants implied by their supplemental responses that the attached documents contained evidence showing a lack of permission or adverse possession when, in truth, they did not. Not until ***after*** Plaintiff's counsel had conducted a thorough review of each page did Defendants explain

16

their "absence of documentation" argument. Consequently, Plaintiff's counsel spent hours scouring all 4,447 pages looking for notations that Defendants knew, in advance, did not exist.

Defendants argue that producing the pipeline file in response to Interrogatory Nos. 6 and 7 was "eminently reasonable," because the questions required them to "prove a negative." The undersigned disagrees. Contrary to Defendants' suggestion, responsive materials directly discussing a lack of permission or adverse possession might have been in Defendants' custody or control.[1] It was this direct evidence that Defendants were asked to identify. Therefore, it was exceedingly unreasonable for Defendants to supply thousands of pages of documents, without context or explanation, which could only be interpreted as relevant to permission and adverse possession when accompanied by the pertinent context and explanation.

Defendants further argue that even if the pipeline file is not directly responsive to the interrogatories, it is responsive to the request for production of documents, which asked Defendants to supply "documents of any type which support the propositions that this Defendant has any type of prescriptive easement or right of way which allows the at issue pipeline to run across the real estate owned by Plaintiff." Defendants assert that, consequently, Plaintiff's counsel would have been required to review the pipeline file anyway. While there is some merit to Defendants' position on this point, the undersigned finds that the failure of Defendants to explain in advance the role of the

---

[1] Examples of such documentation include: (1) correspondence from one of Plaintiff's predecessors in interest refusing to grant permission for the construction of a pipeline through the Ridgewood Subdivision, (2) internal communications or memoranda prepared by Defendants or their predecessors discussing the lack of written permission or an easement on file, and (3) due diligence documents created at the time the pipeline was purchased by Defendants, which confirmed the failure of Defendants' predecessor to obtain an easement or license. All of these types of documents would have been directly responsive to the interrogatories.

pipeline file in relation to the interrogatories caused Plaintiff's counsel to alter the manner in which they reviewed the pipeline file. Certainly, if Plaintiff's counsel had been told before their review that the pipeline file was being produced to show an *absence* of documentation discussing permission for placement of the C-1004 pipeline, counsel would not have spent hours searching for that very documentation. Accordingly, the Court finds that Defendants' supplemental responses to Interrogatory Nos. 6 and 7 caused Plaintiff to needlessly incur additional attorneys' fees.

Second, Defendants' justification for indiscriminately producing the pipeline file in response to Plaintiff's interrogatories is disingenuous. Defendants assert that the pipeline file was produced to show the absence of any documentation reflecting permission for the pipeline's placement. If true, then it is significant that Defendants did not, until questioned and ordered by the Court, also produce the C-1004 "land file," which "includes deeds, easements, and other land-related documents for the pipeline." (*Id.* at 4). By Defendants' own admission, any documents reflecting permission for the pipeline "would likely have been placed in the pipeline file ***or land file***." (*Id.*) (emphasis added). Defendants contend that neither file includes any permission relating to the real property at issue, yet Defendants only produced the pipeline file. Therefore, if Defendants truly believed that the interrogatories required them to "prove a negative," they should have contemporaneously produced the land file. While the Court does not intend to suggest that the production of both files would have been a proper response to the interrogatories, the above factor undermines Defendants' post-production explanation concerning the reasonableness of providing the pipeline file.

The term "document dump" is often used to refer to the production of voluminous and mostly unresponsive documents without identification of specific pages or portions

18

of documents which are responsive to the discovery requests. *See, e.g., U.S. S.E.C. v. Elfindepan, S.A.*, 206 F.R.D. 574, 576–77 (M.D.N.C. 2002); *Stooksbury v. Ross*, 528 F. App'x 547, 550 (6th Cir. 2013). Such a tactic can bury relevant evidence and force the receiving party to expend considerable time and expense parsing through documents in order to glean information which may be relevant. In this case, the Court agrees with Plaintiff that Defendants' actions constituted a "document dump" and were improper under the discovery rules. When attaching the pipeline file to the supplemental responses, Defendants improperly certified that the production was consistent with the discovery rules and was not unreasonable or unduly burdensome. Therefore, the Court finds that sanctions are warranted under Rule 26(g)(3).

### *Sanctions under Rule 37(b)*

Equally troubling are the circumstances surrounding the Rule 30(b)6) deposition in this case. Rule 37(b) authorizes the Court to impose sanctions where a party or person designated under Rule 30(b)(6) fails "to obey an order to provide or permit discovery." Fed.R.Civ.P. 37(b)(2)(A). Plaintiff asserts that the Court ordered Defendants to present a Rule 30(b)(6) witness who could testify regarding the relevance and applicability of the documents in the pipeline file to the claims and defenses in the case. Nonetheless, Defendants presented a witness that was unprepared to answer reasonable questions on the topics approved for the deposition.

It is well-established across jurisdictions that "[p]roducing an unprepared [Rule 30(b)(6)] witness is tantamount to a failure to appear." *United States v. Taylor*, 166 F.R.D. 356, 363 (M.D.N.C.), *aff'd,* 166 F.R.D. 367 (M.D.N.C. 1996). The corporation or entity named in a 30(b)(6) notice "must make a good-faith effort to designate people with knowledge of the matter sought by the opposing party and to adequately prepare

its representatives so that they may give complete, knowledgeable, and nonevasive answers in deposition." *Spicer v. Universal Forest Prod., E. Div., Inc.*, No. 7:07CV462, 2008 WL 4455854, at *3 (W.D. Va. Oct. 1, 2008). In the event that a party or person produces an unprepared 30(b)(6) witness, the Court may impose any of the sanctions listed in Rule 37(b)(2)(A)(i)-(vi), which range from the imposition of costs to the entry of default judgment. Fed. R. Civ. P. 37(d)(3). Further, "[i]nstead of or addition to" the foregoing sanctions, the Court "must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust. *Id.*

Defendants explicitly agreed, and were then ordered by the Court, to produce a witness to testify "regarding the relevancy of the pipeline file documents and the role the documents play in supporting Defendants' claims and defenses." (ECF Nos. 162 at 6-7, 237 at 5-6). Notably, Defendants challenged the scope of Plaintiff's Rule 30(b)(6) Notices, but did not object to this topic. (ECF No. 237 at 5-6). However, at the Rule 30(b)(6) deposition, Defendants offered an individual who, while knowledgeable about the "operation of the pipeline," had no knowledge of the claims and counterclaims in this action. (ECF No. 182-3 at 7). It is axiomatic that an individual who has no knowledge of the claims and defenses will be hard-pressed to provide accurate testimony connecting the documents at issue to those claims and defenses.

It is clear from the deposition transcript that Mr. Barrett was not adequately prepared to explain how the documents in the pipeline file were relevant to Defendants' claims and defenses. Defendants explicitly agreed to designate an individual to explain how the documents produced were relevant and responsive to the interrogatories.

20

Further, "a corporation is expected to *create* an appropriate witness or witnesses from information reasonably available to it if necessary." *QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676, 689 (S.D. Fla. 2012) (citing *Wilson v. Lakner*, 228 F.R.D. 524, 529 (D. Md. 2005). This may include "information [that] was transmitted through the corporation's lawyers." *Id.* (citing *Great Am. Ins. Co. of N.Y. v. Vegas Const. Co.*, 251 F.R.D. 534, 542 (D. Nev. 2008). Not only is a corporate designee required to "testify about facts within the corporation's collective knowledge, [...] but the designee must also testify about the corporation's position, beliefs and opinions. *Id.* (citing *Great Am.*, 251 F.R.D. at 539; *Taylor,* 166 F.R.D. at 362 (designee presents corporation's "position," its "subjective beliefs and opinions" and its "interpretation of documents and events")).

Defendants assert in their memorandum that the pipeline file documents are relevant to Plaintiff's discovery requests because they show the continuous, open, and adverse use of the section of pipeline at issue. (ECF No. 237 at 5). However, that position was not reflected with any detail in Mr. Barrett's testimony. Mr. Barrett provided only a rote response stating that the file showed the absence of permission, but continuous use; this testimony only potentially touched on some of the elements stated in Defendants' memorandum. (ECF No. 182-3). While the Court can extrapolate from Defendants' memorandum and representations at the hearing that *some* of the pipeline file documents may be relevant to Defendants' claims or defenses in this action, that testimony was not communicated in the Rule 30(b)(6) deposition. Defendants were obligated to prepare Mr. Barrett to provide "complete, knowledgeable, and nonevasive answers" on behalf of Defendants regarding each of the documents contained in the pipeline file. *Spicer*, 2008 WL 4455854, at *3. This was not done.

Finding that Defendants failed to produce an adequately prepared Rule 30(b)(6) witness in this case, the Court considers the issue of appropriate sanctions. As noted, a range of sanctions is available for producing an unprepared Rule 30(b)(6) witness. Of the available sanctions, Plaintiff asks for an award of attorneys' fees and costs. The undersigned concludes that an award of some portion of the claimed attorneys' fees and costs is equitable in view of Defendants' violations.

### C. Calculation of Attorneys' Fees and Costs

Plaintiff requests reimbursement of $19,493.32 in attorneys' fees and costs. When calculating an award of reasonable fees and costs, the Court must "determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Information Services, LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008)). The United States Court of Appeals for the Fourth Circuit has identified twelve factors to consider when making this determination, including the following:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson*, 560 F.3d at 243-244 (citing Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)).

Beginning with the hourly rate, the Court notes that Plaintiff is represented by an associate attorney and two experienced litigators. The three attorneys were actively

involved in discovery, and they each spent time either reviewing documents or participating in the Rule 30(b)(6) deposition. Plaintiff requests hourly rates of $350.00 for Mr. Fredeking and Mr. Biser and $250.00 for Mr. Poole, but does not provide any information as to how these rates compare to the rates charged in the community by similarly situated and experienced attorneys performing similar tasks. Notwithstanding the lack of this comparison, the Court can take notice that reviewing documents and deposing a Rule 30(b)(6) designee are tasks routinely performed by litigation attorneys. Therefore, a reasonable hourly rate in this case would be one consistent with the market rate of a general litigator practicing within the Southern District of West Virginia. *Id. HSBC Bank USA, Nat. Ass'n v. Resh*, No. 3:12–cv–00668 2013 WL 2177873, at *6 (S.D. W. Va. May 20, 2013) (citing *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)). The duty to provide evidence of the prevailing hourly rate rests with the party seeking an award of fees. *Id.* Plaintiff did not provide evidence of prevailing hourly rates. However, Defendants did not object to the rates set forth by Plaintiff, and the proposed hourly rates are comparable to those awarded in other cases in this district for other types of litigation. *See Resh*, 2013 WL 2177873, at *6 (collecting cases). Therefore, the undersigned finds that the hourly rates requested by Plaintiff are reasonable for the type of work performed (real property litigation); the skill required to perform the services rendered (analyzing discovery responses, preparing for and conducting a 30(b)(6) deposition, and seeking sanctions for a failure to comply with the discovery rules); the customary fee for such work; and the experience, reputation, and ability of Plaintiff's attorneys.

Having determined the reasonable hourly rates in this case, the Court next examines the number of hours claimed by Plaintiff.  Rule 37 and Rule 26(g)(3) allow the

Court to award the reasonable expenses, including attorney's fees, that were caused by the disobedient party's (or counsel's) failure. The undersigned finds that some time incurred in reviewing the pipeline file was clearly "caused by" the Defendants' failures to abide by the discovery rules when producing the pipeline file. On the other hand, at least a portion of the time spent reviewing the pipeline file would have been incurred by Plaintiff, as some portion of the file is relevant to Defendants' prescriptive easement claim, particularly to show the continuous operation and use of the pipeline. In regard to the Rule 30(b)(6) deposition, if Defendants had properly responded to the interrogatory requests, Plaintiff may not have required a Rule 30(b)(6) deposition to explain the relevance of the documents. The manner in which Defendants supplied the pipeline file created confusion, and that confusion resulted in the Rule 30(b)(6) deposition. Defendants added to the confusion (and simultaneously waived an argument that the Rule 30(b)(6) deposition was unnecessary) by explicitly agreeing to produce a witness who could testify about the relevance of each document in the pipeline file. Therefore, the Court finds that a portion of the time expended reviewing the pipeline file and conducting the Rule 30(b)(6) deposition is attributable to Defendants' noncompliance with the discovery rules.

Defendants argue that Plaintiff's fees and expenses are not supported by adequate evidence and were not reasonably necessary. (ECF No. 237 at 18). Defendants challenge Plaintiff's statement of attorney's fees, pointing out that it contains "an even 20 hours" each for two attorneys to review the documents, but does not specify the date(s) that the time was incurred, the activities on each date, and the amount of time spent on each date. (*Id.* at 17). Further, Defendants contend that the 16 hours of travel for the 30(b)(6) deposition was unnecessary because Plaintiff "knew full well what Defendants [sic]

24

position was before the deposition" and "did not have to conduct the deposition to find out." (*Id.*). "When reviewing a fee petition, the Court must exclude any hours that are excessive, redundant, or otherwise unnecessary." *Allen v. Monsanto Company,* 2007 WL 1859046 at *2 (S.D.W.Va., June 26, 2007) (citing *Hensley y v. Eckerhart,* 461 U.S. 424, 434, 103 .Ct. 1933, 76 L.Ed.2d 40 (1983)). "Counsel for a prevailing party has a duty to exercise 'billing judgment' to 'exclude from a fee request hours that are excessive, redundant or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. . .'" *Daly v. Hill,* 790 F.2d 1071, 1079 (4th Cir. 1986) (quoting *Hensley,* 461 U.S. at 434)).

Defendants produced 4,447 pages of documents. Despite Plaintiff's failure to provide the dates on which the documents were reviewed, Plaintiff provided sufficient support for the Court to conclude that the forty hours incurred was reasonable and related to document review. Given the number of pages in the pipeline file, Plaintiff's attorneys spent approximately thirty-two seconds reviewing each page, which is an objectively reasonable pace. As previously stated, a percentage of the time spent in document review would have been incurred despite Defendants' ill-advised manner of production. Nonetheless, given that the documents were improperly produced in response to the interrogatories, and the manner of production heightened the attention given to the documents by Plaintiff's counsel, the undersigned finds that Plaintiff is entitled to reimbursement of one-half of the time spent in document review. Two attorneys reviewed the documents, each spending equal amounts of time, at rates of $250.00 and $350.00 per hour. Therefore, the Court deducts 10 hours of time at each rate for a total of $6,000.

In regard to the deposition, two of Plaintiff's attorneys attended the Rule 30(b)(6) deposition, and Plaintiff seeks reimbursement for both fees. Plaintiff offers no argument to justify why it was necessary for two attorneys to attend the deposition, and the Court does not independently find any evidence that it was necessary given the scope and purpose of the deposition. Plaintiff does not challenge the amount of time spent on the deposition and the Court finds that it represents a reasonable figure given the fact that counsel traveled from Huntington, West Virginia to Pittsburgh, Pennsylvania for the deposition and the deposition itself lasted almost two hours. The attorneys had the same rate of $350.oo per hour and each expended 8 hours related to the deposition. Therefore, the Court deducts $2,800 from the attorney's fees requested by Plaintiff.

Aside from Defendants' argument that the Rule 30(b)(6) deposition was not reasonably necessary, which the Court finds to be without merit, Defendants' only challenge to Plaintiff's claimed expenses is that Plaintiff's counsel should have driven to the deposition rather than flying in a private plane and renting a car. Somewhat surprisingly, in this case, the expenses would have been the same, if not more, for counsel to drive to the deposition. Plaintiff's claimed expenses total $1,003.37[2] for airplane rental, airplane fuel, and a rental car. However, Plaintiff claims only 8 hours in attorney's fees related to the deposition. Round-trip travel by car between Huntington, West Virginia and Pittsburgh, Pennsylvania is approximately 9 hours. Therefore, factoring in travel time, the nearly two-hour deposition, parking, and at least one meal, Plaintiff could easily have incurred 11 hours in attorney's fees related to the deposition. Plaintiff would have also been entitled to mileage reimbursement at the current

---

[2] Plaintiff also requests $819.51 for "document copying," but provides no cogent explanation as to why Plaintiff found it necessary to copy all of the documents for the deposition. Therefore, that expense is denied.

standard IRS rate of 54 cents per mile for approximately 556 miles, totaling $300.24. Therefore, given the additional hours of attorney's fees at a rate of $350.00 per hour and the mileage reimbursement, it would likely have been equally as expensive for Plaintiff's counsel to drive to the deposition.

Defendants do not challenge the remainder of Plaintiff's claimed expenses. Plaintiff submits a bill totaling $90.44 for lunch. The receipt is not itemized, but based on the cost and the fact that no other meal receipts are included, it appears that the receipt included lunch for both attorneys. Thus, the Court will split the bill in half and award only half of the claimed meal expenses to Plaintiff.

Overall, deducting $2,800 in redundant attorney's fees and $45.22 in lunch expenses related to the 30(b)(6) deposition, as well as another $6,000 in attorney's fees related to reviewing the pipeline file from the claimed total of $19,493.32, the Court finds that Plaintiff is entitled to reimbursement of attorneys' fees and costs in the total amount of **Ten Thousand Six Hundred Forty-Eight Dollars and Ten Cents ($10,648.10)**. Defendants are **ORDERED** to pay Plaintiff this amount within **thirty (30) days** of the date of this Order.

The Clerk is instructed to provide a copy of this Order to counsel of record.

**ENTERED:** November 30, 2016

Cheryl A. Eifert
United States Magistrate Judge

27